## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOSELIN DANIEL CARRANZA-MEJIA,** | ) | |
| | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-076-SLP** |
| | ) | |
| **KRISTI NOEM, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Joselin Daniel Carranza-Mejia, a noncitizen[1] and Honduran national proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). The undersigned set an expedited briefing schedule. Respondents timely filed a Response, Doc. 9, and Petitioner timely filed a Reply, Doc. 10. For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days or otherwise to release him if there is no hearing within that time.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

I.    **Background**

Petitioner, a citizen of Honduras, entered the United States on November 18, 2016. Doc. 9-1.  At some point after his entry, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  Pet. at 6; Resp. at 16.  At some point during his removal proceedings, Petitioner filed an Application for Asylum and for Withholding of Removal.  Doc. 9-1; Resp. at 16.  Petitioner alleges he has now been in removal proceedings with the Dallas, Texas Immigration Court "for several years, but ICE has only recently decided to detain him."  Pet. at 6.

On October 2, 2025, ICE apprehended Petitioner.  *Id.*; Resp. at 16.  ICE detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).  Resp. at 17.  Petitioner has been unable to request a bond hearing before an Immigration Judge ("IJ") because all IJs are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds that those who entered the country without admission or parole are ineligible for a bond hearing.  Pet. at 5.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma.  *Id*. at 2.  He remains detained there.  *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Feb. 5, 2026).

II.    **Petitioner's Claims**

Petitioner asserts three counts in his Petition.

- **Count I: Violation of the Immigration and Nationality Act ("INA").** Petitioner alleges that his continued detention under § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to those, like him, who previously entered the country and have been residing in the United States before being apprehended. Pet. at 12.

- **Count II: Violation of Due Process**. Petitioner alleges that his continued detention without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process. *Id.* at 12-13.

- **Count III: Violation of Due Process – Constructive Denial of Bond through Excessive Amount.** Petitioner alleges that due process requires that if the Court orders a bond hearing, the IJ must (1) consider Petitioner's ability to pay in setting the bond amount, (2) ensure that any bond is reasonably calculated to secure appearance, (3) consider less restrictive alternatives to detention, and (4) articulate findings tied to flight risk or danger rather than generalized enforcement interests. *Id.* at 14-15.

He asks the Court to "issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a)," where "the Immigration Judge must consider Petitioner's ability to pay, alternatives to detention, and may not impose a bond amount that results in continued detention based solely on indigence." Pet. at 15 (citation modified). Petitioner also requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[2] *Id.* at 16.

---

[2] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the Court need not address this request at this juncture.

III.    <u>**Standard of Review**</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."    28 U.S.C. § 2241(c)(3).    "Challenges to immigration detention are properly brought directly through habeas."    *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

"When called on to resolve a dispute over a statute's meaning," the Court must "exhaust all the textual and structural clues bearing on that meaning."    *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (citation modified).    "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."    *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see also United States v. Spradley*, 146 F.4th 949, 958 (10th Cir. 2025) (noting a court must "independently interpret the applicable statutory phrase irrespective of the parties' positions" (citation modified)).

IV.    <u>**Analysis**</u>

A.    **The Court has jurisdiction to consider the Petition.**

Based on specific provisions of the INA at issue, Respondents argue this Court lacks jurisdiction to consider Petitioner's claims.    Resp. at 17-20.    However, several Judges of this District have ruled the INA "does not jurisdictionally bar" a habeas claim like Petitioner's because such a claim "does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders."    *Colin v. Holt*, CIV-25-1189-D,

2025 WL 3645176, at *2 (W.D. Okla. Dec. 16, 2025); *see also Gonzalez Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026) (same); *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026) (same); *Alvarado Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *4-5 (W.D. Okla. Dec. 26, 2025) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *2 (W.D. Okla. Dec. 8, 2025) (same); *Medina-Herrera v. Noem*, No. CIV-25-1203-J, 2025 WL 3460946, at *2 (W.D. Okla. Dec. 2, 2025) (same); *Martinez Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *1 (W.D. Okla. Nov. 26, 2025) (same); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *1 (W.D. Okla. Nov. 20, 2025) (same). *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (expressing "grave doubts over whether it has subject matter jurisdiction" but assuming it had jurisdiction to proceed to the merits). The undersigned agrees with numerous Judges of this District who have found jurisdiction exists to consider habeas challenges to detention like Petitioner's.

### 1.    Sections 1252(a)(5) and 1252(b)(9)

Respondents first argue the Court lacks jurisdiction to consider the Petition because (1) the INA channels "claims related to removal orders" to a court of appeals rather than a district court, and (2) such claims include "review of 'all questions of law and fact, *including interpretation and application of constitutional and statutory provisions*, arising from any action taken or proceeding brought to remove an alien from the United States.'" Resp. at 18 (citing 8 U.S.C. § 1252(a)(5) and quoting § 1252(b)(9) (citation modified)

(emphasis added by Respondents)).    Accordingly, Respondents argue that under § 1252(a)(5) and § 1252(b)(9), a "decision to effectively begin those proceedings" against Petitioner under § 1225(b)(2)(A) "can be reviewed by the appropriate court of appeals as part of an appeal of a final order of removal—but not this Court." Resp. at 18.

Consistent with several district courts, the undersigned interprets Petitioner's habeas claim to be a challenge to his *detention*—not to ICE's decision to "effectively begin those proceedings" against him, as asserted by Respondents.  *Id*.  Courts have rejected Respondents' jurisdictional argument because detention orders "are separate and apart from orders of removal." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 650 (E.D. Va. 2025) (citation modified).  Challenges to detention orders "are legal in nature and challenge specific conduct unrelated to removal proceedings." *Garcia Cortes v. Noem*, No. 25-CV-02677, 2025 WL 2652880, at *2 (D. Colo. Sep. 16, 2025) (citing *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("Congress did not intend the zipper clause to cut off claims that have a tangential relationship with pending removal proceedings.  A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings." (citation modified))).

Here, Petitioner does not challenge any removal order.  "Rather, he challenges the constitutionality and legality of his detention during the period before his removal hearing." *S.D.B.B. v. Johnson*, No.  25-CV-882, 2025 WL 2845170, at *3 (M.D.N.C. Oct. 7, 2025).  As such, "§ 1252(b)(9) does not deprive the court of jurisdiction." *Id.*  This interpretation tracks the same analysis of several district courts. *See, e.g.*, *Caballero v. Baltazar*, No. 25-CV-03120, 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2025) (ruling § 1252(b)(9) does

not present a jurisdictional bar to a noncitizen challenging "the legality of his continued detention without a bond hearing"); *Jose J.O.E. v. Bondi*, No. 25-CV-3051, 797 F. Supp. 3d 957, 968-69 (D. Minn. 2025) (same) (collecting cases)).

The undersigned agrees with the prevailing analysis from other district courts and concludes that § 1252(a)(5) and § 1252(b)(9) do not deprive the Court of jurisdiction.

### 2.    Section 1252(g)

Respondents also argue the INA limits a district court's jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by [Department of Homeland Security ("DHS")] to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter."  Resp. at 18 (quoting 8 U.S.C. § 1252(g) (citation modified; emphasis added by Respondents)).  Respondents assert that "the bar on considering the commencement of proceedings includes a bar on considering challenges to the *basis on which* DHS chooses to commence removal proceedings."  *Id.* at 19 (citation modified).[3]  However, most Judges in this District have rejected the same jurisdictional argument.  *See, e.g., Gonzalez Cortes*, 2026 WL 147435, at *3; *Cruz-Hernandez*, 2026 WL 18932, at *1; *Alvarado Montoya*, 2025 WL 3733302, at

---

[3] Respondents rely on *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) to argue that "the bar on considering the commencement of proceedings includes a bar on considering challenges to the *basis on which* DHS chooses to commence removal proceedings."  Resp. at 19 (citation modified).  Not only is *Alvarez* distinguishable on its facts from those here, but district courts considering detention orders have also disagreed with jurisdictional arguments relying on *Alvarez*.  *E.g., Avila v. Bondi*, No. CV 25-3741, 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025); *Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 1895479, at *4-5 (S.D. Fla. July 8, 2025).

*4-5; *Valdez*, 2025 WL 3709021, at *1; *Urbina Garcia*, 2025 WL 3516071, at *2. *But see*
*Gutierrez Sosa*, 2026 WL 36344, at *3 (expressing "grave doubts" about whether subject
matter jurisdiction exists but assuming it does and proceeding to the merits).

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999),
the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to "three
discrete actions"—the commencement of removal proceedings, adjudication of removal
proceedings, and execution of removal orders.  The Supreme Court found it "implausible
that the mention of three discrete events along the road to deportation was a shorthand way
of referring to all claims arising from deportation proceedings."  *Id.*; *see also id.* at 487
(referencing the Court's "narrow reading of § 1252(g)").  More recently, in *Jennings v.
Rodriguez*, 583 U.S. 281, 294 (2018), the Court reaffirmed this narrow reading, explaining
that *Reno* "did not interpret [§ 1252(g)] to sweep in any claim that can technically be said
to 'arise from' the three listed actions of the Attorney General."  Instead, the statutory
language refers "to just those three specific actions themselves."  *Id.*

Here, Petitioner does not challenge the commencement of removal proceedings, the
adjudication of removal proceedings, or the execution of a removal order.  Instead, he
challenges "the narrow legal questions of whether [his] detention under 8 U.S.C. § 1225
violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary
detention framework."  *Gutierrez v. Baltasar*, No. 25-CV-2720, 2025 WL 2962908, at *3
(D. Colo. Oct. 17, 2025).  As such, Petitioner's claims fall outside the narrow jurisdictional
limitations of § 1252(g) and, accordingly, § 1252(g) does not deprive the Court of

jurisdiction.[4] This conclusion is consistent with the approach of this Court and other Judges in this District who have recently addressed Respondents' jurisdictional challenge. *See, e.g., Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Cruz-Hernandez*, 2026 WL 18932, at *1; *Alvarado Montoya*, 2025 WL 3733302, at *4-5; *Valdez*, 2025 WL 3709021, at *1; *Urbina Garcia*, 2025 WL 3516071, at *2.

### 3.    Conclusion

Several Judges in this District have rejected Respondents' jurisdictional arguments in similar cases.   The undersigned likewise concludes that neither § 1252(a)(5), § 1252(b)(9), nor § 1252(g) bars this Court from jurisdiction to consider Petitioner's challenge to his detention.

### B.    Section 1226(a) applies to Petitioner's detention.

The two sections of the INA at issue are 8 U.S.C. §§ 1225 and 1226.   Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation

---

[4] Respondents' citation to *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010) is inapposite because that petitioner had been ordered removed and was challenging his removal based on false information provided to ICE leading to his removal. *See Alonso v. Tindall*, No. 25-CV-652, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) (finding *Tsering* inapposite and concluding the court had jurisdiction to review petitioner's habeas challenge to detention under § 1226 rather than § 1225).  Judge Jones has similarly rejected Respondents' arguments that *Tsering* precludes jurisdiction over this type of habeas petition. *See Urbina Garcia*, 2025 WL 3516071, at *2 (finding similar "claims do not 'arise from' and are not directly and immediately connected to the Attorney General's decision to commence proceedings, proceed with the adjudication of Petitioner's case, or any removal order," and therefore "§ 1252(g) does not strip this Court of jurisdiction."); *Medina-Herrera*, 2025 WL 3460946, at *2 (same).

modified).  The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13).  Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."

On the other hand, Section 1226(a) authorizes detention of a noncitizen "on a warrant issued by the Attorney General" pending removal proceedings.  *Id.* § 1226(a) (citation modified).  A noncitizen detained under § 1226(a) is entitled to a bond hearing.  *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing.  If he is not an "applicant for admission" and "seeking admission" under § 1225, then Petitioner falls within the confines of § 1226(a), which would entitle him to a bond hearing.  Petitioner argues he is being held in violation of the INA and § 1225(b)(2) does not apply to him because he had "been residing in the United States prior to being apprehended and placed in removal proceedings."  Pet. at 12.  According to Petitioner, his detention under § 1225(b)(2) is unlawful and he is entitled to a bond hearing under § 1226(a).  Respondents contend that Petitioner is an "applicant for admission" and therefore properly detained under § 1225(b)(2)(A).  Resp. at 16.  Further, Respondents claim (1) § 1225(b)(2)(A) is not

limited to noncitizens "arriving" in the United States, (2) any overlap between the two provisions does not undermine ICE's interpretation of the two statutes, and (3) § 1226(a) is reserved for those who do not fall within the confines of § 1225(b)(2)(A). *Id.* at 21-30.

The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue. Notably, five Judges in the District, including this Court, have recently applied § 1226(a) to habeas petitioners similarly situated to Petitioner. *See, e.g., Gonzalez Cortes*, 2026 WL 147435, at *7; *Ramirez Rojas*, 2026 WL 94641, at *1; *Morocho v. Kelly*, No. CIV-25-1247-R, 2026 WL 36452, at *3 (W.D. Okla. Jan. 6, 2026); *Cruz-Hernandez*, 2026 WL 18932, at *3; *Urbina Garcia*, 2025 WL 3516071, at *4.[5] Two Judges in the District have applied § 1225(b)(2)(A). *See Gutierrez Sosa*, 2026 WL 36344, at *3 (finding "§ 1225 unambiguously applies to [a similarly situated] Petitioner's case"); *Alvarado Montoya*, 2025 WL 3733302, at *12 (finding that "§ 1225 unambiguously deems Petitioner an 'applicant for admission' who is 'seeking admission'"). The undersigned agrees with this Court's prior rulings, the majority of Judges in this District, and the great

---

[5] Some Judges in this District have found analysis about the title, purpose, and historical interpretation was not necessary because § 1225 unambiguously does not apply to those petitioners. *See, e.g., Valdez*, 2025 WL 3709021, at *3 n.1 (concluding "that the plain language of § 1225 does not apply to Petitioner" so "there is no need to address Respondents' arguments regarding the title, purpose, and historical interpretation" of § 1225); *Urbina Garcia*, 2025 WL 3516071, at *3 n.4 (same); *Medina-Herrera*, 2025 WL 3460946, at *3, n.3 (same); *Martinez Diaz*, 2025 WL 3296310, at *3 (same); *Escarcega*, 2025 WL 3243438, at *3 (same). This Court, on the other hand, agreed with analysis similar to this Report and Recommendation—that the statutory text, legislative history, and past practice all support a finding that Petitioner's detention is governed by § 1226(a) and not § 1225(b)(2). *Gonzalez Cortes*, 2026 WL 147435, at *4-7.

weight of authority to conclude Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A). Accordingly, the undersigned recommends that the Court conclude Petitioner is entitled to a bond redetermination hearing under § 1226(a).

### 1.    Statutory interpretation of § 1225(b)(2)(A) and § 1226(a)

When interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Id.* (citation modified). "So when deciding whether the language is plain, the Court must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified).

At issue is whether "an applicant for admission" who is "seeking admission" includes a noncitizen like Petitioner, who was living in the United States when arrested. 8 U.S.C. § 1225(a)(1). The statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the noncitizen has already entered and has been residing in the United States. Even when statutory terms are unambiguous, context still matters. *See United States v. Bishop,* 412 U.S. 346, 356 (1973) ("Context is important in the quest for [a] word's meaning." (citation modified)); *United States v. Ceballos-Martinez,* 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that it chose to use them"). Further, "it is a cardinal principle of statutory construction that a

statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation modified). When considering the INA's overall context, the undersigned concludes the statute limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).

Giving effect to each clause and word of a statute includes an analysis of the statute's title. "A title is especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation modified). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added). Use of the term "arriving" to describe noncitizens indicates the section governs entrance of noncitizens to the United States. Section 1225 is also located between two other sections dealing with arrivals of noncitizens: § 1224 is titled "Designation of ports of entry for aliens arriving by aircraft," and § 1225a is titled "Preinspection at foreign airports." The undersigned is not persuaded by Respondents' arguments to the contrary. *See* Resp. at 22-23.

The undersigned's reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to let noncitizens into the country. The subheading for § 1225(b)(2) reads "Inspection of Other Aliens," reinforcing the idea that it applies to those coming in, not already present. Section 1225(d) is labeled "Authority Relating to Inspections" and outlines the various powers of immigration officers to search and detain vessels and "arriving aliens. Further, § 1225(a)(2) and § 1225(a)(3) address "stowaways" and "crewmen," terms that likewise suggest arrival at a border or port of entry.

As relevant here, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A). Chief Judge DeGuisti recently held "that § 1225(b)(2)(A) unambiguously requires that an 'applicant for admission' also be 'seeking admission' for the section to control," and "noncitizens 'seeking admission' are those who have not effected an entry into the United States." *Colin*, 2025 WL 3645176, at *4 (citation modified).  Judge Russell similarly ruled that § 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States."  *Valdez*, 2025 WL 3709021, at *3; *see also Morocho*, 2026 WL 36452, at *3 (same); *Cruz-Hernandez*, 2026 WL 18932, at *3 (same); *Escarcega*, 2025 WL 3243438, at *2 (same).   Numerous Judges in this District further ruled that if all "applicants for admission" are also "seeking admission," as Respondents contend, then § 1225(b)(2)(A)'s inclusion of the phrase "seeking admission" would be redundant and superfluous.  *Gonzalez Cortes*, 2026 WL 147435, at *3; *Morocho*, 2026 WL 36452, at *2; *Cruz-Hernandez*, 2026 WL 18932, at *3; *Valdez*, 2025 WL 3709021, at *3; *Colin*, 2025 WL 3645176, at *4; *Martinez Diaz*, 2025 WL 3296310, at *2.  "Courts should avoid statutory interpretations that make any part of the statute superfluous."  *Colin*, 2025 WL 3645176, at *4 (citation modified); *see also Gonzalez Cortes*, 2026 WL 147435, at *3 (same); *Martinez Diaz*, 2025 WL 3296310, at *2 (same).

The undersigned similarly interprets the term "seeking admission" to narrow the category of "applicants for admission" subject to mandatory detention.  "'Seeking' means

14

'asking for' or 'trying to acquire or gain.' Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking." *Lepe v. Andrews*, No. 25-CV-01163, 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025). "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use of the present participle in § 1225(b)(2)(A) implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Caballero*, 2025 WL 2977650, at *6 (citation modified); *accord Colin*, 2025 WL 3645176, at *4-5. As such, the undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry.

This analysis is not impacted by Petitioner's application for asylum. *See, e.g.*, *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D. Okla. Jan. 20, 2026) (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum").

Finally, § 1225's place in the overall statutory scheme supports the undersigned's reading. *See King*, 576 U.S. at 486 (holding that courts are meant to "construe statutes, not isolated provisions" (citation modified)). That Congress separated removal of "arriving aliens" from its more general section for "Apprehension and detention of aliens" in § 1226, implies that Congress enacted § 1225 for a specific, limited purpose. This interpretation is also consistent with the Supreme Court's guidance in *Jennings* that § 1225(b)(1) and (b)(2)

15

"authorizes the Government to detain certain aliens seeking admission into the country"
and § 1226(a) and (c) "authorizes the Government to detain certain aliens already in the
country pending the outcome of removal proceedings." 583 U.S. at 289. That delineation
by Congress aligns with the Supreme Court's recognition that "the distinction between an
alien who has effected entry into the United States and one who has never entered runs
throughout immigration law." *Zadvydas*, 533 U.S. at 693 (citation modified).

After considering the text and statutory framework, the undersigned concludes the
terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A) do not cleanly
apply to noncitizens like Petitioner. He has resided in the United States for years and was
not arrested when attempting to cross the border or enter the country through a port. "As
§ 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to
the United States, it cannot, according to its ordinary meaning, apply to [the petitioner],
because he has already been residing in the United States for several years." *Colin*, 2025
WL 3645176, at *5 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y.
2025)). Ultimately, a textual analysis of the immigration framework indicates Petitioner's
circumstances align with § 1226(a), not § 1225(b)(2)(A).

### 2.    Legislative history and recent amendment of § 1226

The legislative history and recent amendment of § 1226 also indicate the statute
applies to noncitizens who reside in the United States but previously entered without
inspection. First, § 1226(a)'s predecessor statute, 8 U.S.C. § 1252(a)(1),

> governed deportation proceedings for all noncitizens arrested within the
> United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination
> of deportability any noncitizen may, upon warrant of the Attorney General,

16

be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a noncitizen already physically in the United States.'").  This predecessor statute, like Section 1226(a), included discretionary release on bond.  *See* § 1252(a)(1) (1994) ("Any such noncitizen taken into custody may, in the discretion of the Attorney General be continued in custody or be released under bond.").  Upon passing [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")], Congress declared that the new Section 1226(a) "restates the current provisions in the predecessor statute regarding the authority of the Attorney General to arrest, detain, and release on bond a noncitizen who is not lawfully in the United States."  H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same).

*Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (citation modified); *see also Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sep. 9, 2025) ("If § 1226(a) adopted the predecessor[] [statute]'s authority to release noncitizens unlawfully present in the United States on bond, then [petitioner] is entitled to discretionary release on bond as well.").

Respondents assert this interpretation undermines the purpose of IIRIRA and "effectively repeals" certain provisions of the law. Resp. at 23-25.  The undersigned, though, agrees with Judge Jones' recent ruling in *Urbina Garcia*, rejecting Respondents' identical assertions and holding that "when Congress enacted the IIRIRA, it did not fully disrupt the old system, including the system of detention and release on bond."  2025 WL 3516071, at *4 (quoting *Hernandez v. Baltazar*, No. 25-CV-3094, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025)); *see also Gonzalez Cortes*, 2026 WL 147435, at *6 ("As such, the Court finds that the majority view's narrow interpretation of § 1225(b)(2) does not run afoul of the IIRIRA.").

Further, Congress' recent amendment to § 1226 renders the government's interpretation of § 1225(b)(2)(A) superfluous. Last year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added § 1226(c)(1)(E), which mandates detention for noncitizens who

- are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (misrepresentation), or § 1182(a)(7) (lacking valid documentation) and

- have been arrested for, charged with, or convicted of certain crimes.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii).

Considering § 1182(a)(6)(A)(i) specifically refers to "alien[s] present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the new statutory exception would be superfluous if § 1225(b)(2) already authorized their mandatory detention. That is, because an "alien present in the United States" without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *See Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (citation modified)). District courts have noted that adoption of Respondents' interpretation "would largely nullify a statute Congress enacted this very year and must be rejected." *Pizarro Reyes*, 2025 WL 2609425, at *5 (quoting *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citation modified)).

18

The undersigned's recommended interpretation is consistent with numerous district courts that have ruled on this issue, including this Court. *See Gonzalez Cortes*, 2026 WL 147435, at *6 (finding by this Court that "the enactment of the Laken Riley Act lends further support for the application of § 1226 in these circumstances"); *see also, e.g., Alvarez Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025) ("If Respondents' interpretation of section 1225 is correct—that the mandatory detention provision in section 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted—then Congress would have had no reason to enact section 1226(c)(1)(E).").

### 3.    The BIA's current and historical interpretations of § 1225(b)(2)(A) and § 1226(a)

On September 5, 2025, the Board of Immigration Appeals ("BIA") ruled that an immigration judge lacks authority to consider a bond request for any person who is present in the United States without admission, treating such person as an applicant for admission who is seeking admission and subject to mandatory detention under § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025). The BIA in *Hurtado* concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for longer than two years without apprehension. *Id.* at 229.

The undersigned reaches a different conclusion from the BIA's statutory analysis in *Hurtado*. Notably, this Court is not bound by the BIA's interpretation of § 1225(b)(2)(A). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("Courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute

is ambiguous." (citation modified)).  In *Hurtado*, the BIA characterized as a "legal conundrum" the idea that a noncitizen's continued unlawful presence means they are not "seeking admission." 29 I. & N. Dec. at 221.  However, a noncitizen's continued presence cannot constitute "seeking admission" when that noncitizen *never attempted* to obtain lawful status.  The BIA also found that § 1225(b)(2)(A) does not render superfluous the Laken Riley Act.  *Hurtado*, 29 I. & N. Dec. at 222.  However, both § 1225(b)(2)(A) and § 1226(c)(1)(E) mandate detention for inadmissible noncitizens, and whether one includes additional conditions for such detention does not alter the redundant impact.

The BIA's decision in *Hurtado* reflects a sharp pivot from longstanding immigration practice and policies.  For almost three decades, most noncitizens who entered without inspection were placed in standard removal proceedings and received bond hearings, unless subject to an exception.  Months after passage in 1996 of the current immigration statutory scheme, the Department of Justice issued implementing regulations about the IIRIRA and explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified). Decades of ICE practices lend support to Petitioner's entitlement to a bond redetermination hearing under § 1226(a) "because the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Loper Bright Enters.*, 603 U.S. at 386 (citation modified).  Respect for Executive Branch

interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

Accordingly, the government's historical application of immigration laws also supports the undersigned's conclusion that § 1226(a) applies to Petitioner. Again, this analysis aligns with other courts that have recently addressed this issue, including Judges in this District. *See Gonzalez Cortes*, 2026 WL 147435, at *7 (finding by this Court that "while Respondents claim that their decision to use § 1225(b)(2) is discretionary," "Respondents ignore that such a decision conflicts with nearly thirty years of past practices"); *see also, e.g., Jiménez García v. Raybon*, No. 25-cv-13086, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (finding "ICE's decision to upend 30 years of reasoned statutory interpretation is not persuasive").

### 4.    Conclusion

In sum, the undersigned agrees with this Court, Chief Judge DeGiusti, Judge Jones, Judge Russell, Judge Heaton, and the myriad district courts that have recently applied § 1226(a) to govern detention of noncitizens like Petitioner. Respondents' arguments and the BIA's decision to pivot from decades of consistent statutory interpretation are contrary to many courts that have recently addressed this question of statutory interpretation. In the Western District of Oklahoma, the five above-referenced District Judges have ruled in at least 17 separate habeas challenges that § 1226(a) governs petitioners who are already in the country. Notably, several Judges in the District have further held that because § 1225(b)(2)(A) was "unambiguous" in support of the petitioner's interpretation, the Court

did not need to address the statute's title, legislative purpose, historical interpretation, or the Laken Riley Act. *Morocho*, 2026 WL 36452, at *3 n.1; *Valdez*, 2025 WL 3709021, at *3 n.1; *Escarcega*, 2025 WL 3243438, at *3; *Martinez Diaz*, 2025 WL 3296310, at *3. Judge Jones noted, though, that "even if the Court did find § 1225(b)(2)(A) ambiguous, the section's legislative purpose and historical interpretations do not support Respondents' position." *Escarcega*, 2025 WL 3243438, at *3 n.5 (citation modified). Additionally, this Court found that the plain language, legislative history, and past practices all support a finding that "Petitioner's detention is not governed by §1225(b)(2)." *Gonzalez Cortes*, 2026 WL 147435, at *7. Judge Dishman and Judge Wyrick in this District have adopted Respondents' position and applied § 1225(b)(2)(A). *See Gutierrez Sosa*, 2026 WL 36344, at *3; *Alvarado Montoya*, 2025 WL 3733302, at *6-12.

Other district courts in the Tenth Circuit have routinely applied § 1226(a) in recent habeas challenges akin to Petitioner's. *See, e.g.*, *Aguilar Tanchez v. Noem*, No. 25-CV-1150, 2026 WL 125184, at *10 (D. Utah Jan. 16, 2026) (holding petitioner's detention is governed by § 1226(a) and not § 1225(b)(2)); *Leonardo G.Z. v. Noem*, No. 25-CV-0600, 2025 WL 3755590, at *10 (N.D. Okla. Dec. 29, 2025) (applying § 1226(a) after "having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens"); *Pu Sacvin v. De Anda-Ybarra*, No. 25-cv-1031, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Consistent with the majority of district courts to address the issue, this Court finds that § 1226 governs here."); *Cruz Valera v. Baltazar*, No. 25-CV-

03744, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025) (same); *Espinoza Ruiz v. Baltazar*, No. 25-CV-03642, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025) (same).

Outside this circuit, the Seventh Circuit Court of Appeals recently ruled on a motion to stay pending appeal that based on a "preliminary record" the respondents "are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). Judges in this District has found the Seventh Circuit's analysis to be "persuasive." *Valdez*, 2025 WL 3709021, at *2; *see also Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287, at *2 (W.D. Okla. Jan. 23, 2026) (noting this Court's determination that a similarly-situated petitioner's detention is governed by § 1226 "is in accord" with the Seventh Circuit); *Maldonado v. Noem*, No. CIV-25-1379-J, 2026 WL 160950, at *1 (W.D. Okla. Jan. 21, 2026) (finding the Seventh Circuit's analysis persuasive). The Seventh Circuit concluded Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of 'applicants for admission'] but elected not to do so." *Castanon-Nava*, 161 F.4th at 1061.

In addition, an "overwhelming, lopsided majority" of district courts around the country have applied § 1226(a) to govern detention for noncitizens like Petitioner. *Mercado v. Francis*, --- F. Supp. 3d ---, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting Respondents' interpretation of § 1225 and § 1226 "has been challenged in at least 362 cases in federal district court" and "challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about

fifty different courts spread across the United States"); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support finding that § 1226 applies to these circumstances." (citation modified)).

Finally, the undersigned has considered Respondents' citations to cases adopting their position that noncitizens like Petitioner fall under § 1225(b)(2)(A) despite residing in the United States, as well as Judge Dishman's and Judge Wyrick's recent decisions concluding the same. *See* Resp. at 8 n.2 (collecting cases); *Gutierrez Sosa*, 2026 WL 36344, at *3; *Alvarado Montoya*, 2025 WL 3733302, at *6-12. For the reasons previously discussed, the undersigned respectfully disagrees with the textual analysis and statutory interpretation of these decisions about who is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A) to trigger mandatory detention. The undersigned instead agrees with this Court, Chief Judge DeGiusti, Judge Jones, Judge Russell, Judge Heaton, and the overwhelming number of other courts that recently addressed this question.

After carefully analyzing the statute's text, structure, and history, along with longstanding immigration practices, the undersigned recommends that the Court apply § 1226(a) to govern Petitioner's current detention. As such, Petitioner is entitled under § 1226(a) to a prompt individualized bond hearing before a neutral IJ. *See, e.g., Alvarez Puga*, 2025 WL 2938369, at *5 (finding "that section 1226(a) and its implementing regulations govern [p]etitioner's detention, not section 1225(b)(2)(A)" and that petitioner "is entitled to an individualized bond hearing as a detainee under section 1226(a)").

24

Accordingly, the undersigned recommends that the Court grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within five business days or otherwise release him if he has not received a lawful bond hearing within that period.

### C.    The Court should decline to address Petitioner's due process claims.

Petitioner argues that his continued detention without a bond hearing violates his rights to due process.  Pet. at 12-13.  If the Court grants Petitioner's requested relief for a bond hearing under § 1226(a), the undersigned recommends that the Court decline to decide the merits of the due process claim based on his continued detention.  *See, e.g.*, *Colin*, 2025 WL 3645176, at *6 n.3 ("Because the Court grants the relief the Petitioner requests based on the applicability of 8 U.S.C. § 1226(a), the Court declines to decide the merits of Petitioner's due process claim."); *Valdez*, 2025 WL 3709021, at *3 n.2 (same).

In addition, Petitioner argues that if the Court orders a bond hearing under § 1226, the Court must ensure the IJ complies with due process by ordering the IJ to (1) consider Petitioner's ability to pay when setting the bond amount, (2) ensure that any bond is reasonably calculated, (3) consider less restrictive alternatives to detention, and (4) articulate specific findings.  Pet. at 14-15.  In his Reply, Petitioner appears to soften his request on this claim, now requesting only that any Court order requiring a bond hearing "come with reminders of law that ability to pay must be considered and that bonds cannot be constructively denied without considering ability to pay and alternatives to detention."  Doc. 10 at 7.

The undersigned recommends that the Court decline to address this additional claim for relief.  First, the undersigned agrees with Respondents that Petitioner's claim is unripe, as "the Court cannot adjudicate a future due process violation based on a speculatory bond amount."  Resp. at 37; *accord United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) ("Thus, a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified)).  Second, the undersigned questions whether the Court would have jurisdiction to review such a claim of excessive bond.  By statute, "the Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review" and "no court may set aside any action or decision by the Attorney General under this section regarding the . . . denial of bond or parole" of any noncitizen.  8 U.S.C. § 1226(e) (citation modified); *see also Pelletier v. United States*, 653 F. App'x 618, 622 (10th Cir. 2016) ("To the extent that [petitioner] seeks modification of or release from the conditions of his bond, 8 U.S.C. § 1226(e) expressly bars judicial review . . . .").

## V.    Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.   The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objection must be filed not later than **February 12, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **February 18, 2026**.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 5th day of February, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE